UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | No. 04 CR 0377 |
| v.  ) | |
| ) | Judge John W. Darrah |
| GARY D. SMALL,  ) | |
| ) | |
| Defendant.  ) | |

## MEMORANDUM OPINION AND ORDER

In April 2004, Defendant, Gary Small, was charged in a three-count indictment with two counts of perjury and one count of obstruction of justice. The charges stemmed from Small's conduct in providing perjured testimony during the course of a federal narcotics trial being held before Judge Wayne Anderson. Specifically, a July 2002 indictment charged Troy Lawrence, Stacia Smith, and twenty-four others in a variety of crimes related to a large-scale crack cocaine organization operating in Chicago Heights, Illinois (the "Lawrence Indictment").

Count One of the Lawrence Indictment charged Lawrence, Smith, and others with participating in a narcotics conspiracy within 1,000 feet of an elementary school. Count Twenty-Five of the Lawrence Indictment charged Lawrence and Smith with possessing an Intratec Model AB-10 ("Tec-9") semi-automatic handgun in furtherance of the narcotics conspiracy. The Tec-9 was recovered from the front seat of Smith's car after DEA agents monitoring a wiretap heard Lawrence ask Smith to bring him the weapon. In addition, on March 5, 2002, during the execution of a search warrant at Lawrence's home, law enforcement officers recovered a fully loaded Glock 9 mm handgun next to a box of 9 mm ammunition from Lawrence's bedroom.

In September 2003, trial began on the Lawrence Indictment. On November 12, 2003, Small was called to testify at the Lawrence trial. While under oath, Small made false declarations to the jury and court, including: (1) he had placed the Tec-9 in the trunk of Smith's car without her knowledge and told nobody about the fact the gun was in Smith's car until after she was pulled over by police and the gun was found; (2) he called Lawrence to tell Lawrence the gun had accidentally been left in the trunk of Smith's car; and (3) he left the Glock 9 mm at Lawrence's home because he did not want to drive around with the gun.

In April 2004, Small was charged in a three-count indictment with two counts of perjury and one count of obstruction of justice based on his false testimony in the Lawrence trial. On June 1, 2004, Small pled guilty to Counts One and Three. Count One alleged that Small knowingly made false declarations in violation of 18 U.S.C. § 1623(a). The maximum period of imprisonment under this section is five years. Count Three alleged that Small obstructed justice in violation of 18 U.S.C. § 1503. Section 1503(b)(3) reflects a ten-year maximum term of incarceration. Pursuant to U.S.S.G. § 2J1.3, the base level for a violation of Section 1623(a) is a level 14, which is also the base level for a violation of Section 1503, U.S.S.G. § 2J1.2(c)(1).

In his plea agreement, Small admitted to certain facts concerning his false testimony at the Lawrence trial. Small admitted that at the time of the Lawrence trial, he knew his declarations were false in that he had not placed the Tec-9 in the trunk of Smith's car and had not left the Tec-9 in the trunk unbeknownst to both Lawrence and Smith. In fact, several months before Smith was stopped with the Tec-9, Small provided the Tec-9 to Lawrence at Lawrence's request. Shortly before the Lawrence trial, Smith asked Small to testify about how the Tec-9 ended up in Smith's car on January 24, 2002. Small then fabricated a story about washing Smith's car and leaving the Tec-9

in the trunk of her car. Small informed Smith about the proposed story. Smith was aware that Small's story was a lie but facilitated meetings between Small and Smith's attorney so that Small could falsely testify at trial. Small also knew that Lawrence was a drug dealer in Chicago Heights and was on trial with others for participating in a drug conspiracy case that allegedly used guns, including the Tec-9 and Glock 9 mm.

In addition, at the time of his testimony, Small knew his declarations were false in that he had not left the Glock 9 mm at Lawrence's home because he was concerned about being pulled over with the gun. Rather, Small provided the gun at Lawrence's request after Lawrence had been injured in a shooting.

The Sentencing Guideline sections applicable to Small are Section 2J1.3 for perjury and Section 2J1.2 for obstruction of justice. Both of these Guidelines cross-reference Section 2X3.1, Accessory After the Fact. Section 2J1.2 states that the Accessory After the Fact Guideline should be used "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense [and] the resulting offense level is greater than that determined using [the 2J1.2 obstruction Guideline]." Likewise, Section 2J1.3 notes that the Accessory After the Fact Guideline should be used "[i]f the offense involved perjury, subornation of perjury, or witness bribery in respect to a criminal offense [and] the resulting offense level is greater than that determined using [the Section 2J1.3 perjury Guidelines]." The parties do not dispute that Small's obstruction involved the prosecution of a criminal offense and that the perjury was related to a criminal case. Thus, under either Guideline, the Court is directed to the Accessory After the Fact Guideline, Section 2X3.1.

Section 2X3.1 provides that the base level is "6 levels lower than the offense level of the underlying offense" but "shall not be more than level 30." U.S.S.G. § 2X3.1. The Application Notes

3

state that the "'underlying offense' means the offense to which the defendant is convicted of being an accessory." U.S.S.G. § 2X3.1(a), App. Note 1. The court is to "[a]pply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendants." U.S.S.G. § 2X3.1(a), App. Note 1. Furthermore, in the case of accessory after the fact, "the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant. U.S.S.G. § 1B1.3, App. Note 10.

The parties agree that the underlying offense in Lawrence involved the possession and distribution of controlled substances within 1,000 feet of an elementary school. Accordingly, Section 2D1.2 determines the base offense level. Pursuant to Section 2D1.2, the base offense level is computed based on the quantity and type of drugs involved plus 2, as well as other specific characteristics that may effect the base offense level.

Small argues that he was unaware of the quantity of drugs involved in the Lawrence trial; therefore, the base level should be twelve because this is the first offense level that includes cocaine and cocaine base. However, the "quantity of drugs is not a specific offense characteristic, but rather a factor taken into account in determining the base offense level." *United States v. Girardi*, 62 F.3d 943, 946 (7th Cir. 1995) (*Girardi*); *United States v. Cross*, 371 F.3d 176, 181 (4th Cir. 2004) (*Cross*). Section 2X3.1 does not require that an accessory "know" or "reasonably know" factors used to calculate the base offense level, such as the quantity of drugs involved in the offense. *See Girardi*, 62 F.3d at 946; *Cross*, 371 F.3d at 181. Accordingly, Small need not have known or reasonably have known the quantity of drugs involved.

4

Small next argues that even if he did not have to know or reasonably know the quantity of drugs, the base offense level would be 32 because the indictment only charged the equivalent of 10 kilograms of cocaine. Furthermore, no increase for specific offense characteristics, such as operating the conspiracy within 1,000 feet of a school or the possession of a weapon during the offense, may be added because Small did not know or reasonably know these factors when he testified.

The Government argues that the base offense level for the drug charges begins at a level 38 based on proof of over 1.5 kilograms of crack cocaine in the Lawrence case. A two-level increase is added because the offense involved the use of dangerous weapons and an additional two-level increase is added because the offense took place within 1,000 feet of a school. Thus, the Government's base offense level is 42.

As stated above, Small argues that the quantity of drugs used to determine the base offense level is that identified in the indictment. The Government argues that 1.5 kilograms of crack cocaine is the correct amount based on the numerous plea agreements entered by members of the Lawrence conspiracy as well as the trial transcripts. The verdict form from the Lawrence trial, as to Count One, indicates that the underlying offense to which Small is convicted of being an accessory is a conspiracy to distribute or to possess with intent to distribute 50 grams of cocaine base or more and a conspiracy to distribute or to possess with intent to distribute 500 grams of cocaine or more but less than 5 kilograms. As to Count Twenty-Five of the Lawrence indictment, the verdict form does not indicate a drug amount.

The Application Notes state that the "'underlying offense' means the offense to which the defendant is convicted of being an accessory." U.S.S.G. § 2X3.1(a), App. Note 1. Lawrence and Smith were convicted of a conspiracy to distribute or to possess with intent to distribute 50 grams

5

of cocaine base or more and a conspiracy to distribute or to possess with intent to distribute 500 grams of cocaine or more but less than 5 kilograms, as demonstrated by the verdict form in that trial. Accordingly, the quantity of drugs used to determine the base offense level should be at least 50 grams of cocaine base and at least 500 grams but less than 5 kilograms of cocaine. Pursuant to Section 2D1.1, the initial base level offense is 32 (based on at least 50 grams but less than 150 grams of cocaine base).

Pursuant to Section 2D1.2(a)(1), the base level is increased by two because the drug offense occurred within 1,000 feet of an elementary school – a protected location. Small argues that the increase of two points because the offense took place in a protected area is a specific offense that must be known or reasonably known by Small. However, Section 2D1.2 specifically states that it is computing the base offense level, and drug offenses that take place within a protected location are not listed as a specific offense characteristic in Section 2D1.1(b). *See also, United States v. Schnell*, 982 F.2d 216, 221 (7th Cir. 1992) ('schoolyard statutes' increase the penalty regardless of the defendant's knowledge that the drug sale occurs within 1,000 feet of a school). Accordingly, the base level offense is 34 (32 pursuant to Section 2D1.1 + 2 pursuant to Section 2D1.2).

Next, the Court must determine if the base offense level should be increased because of any applicable specific offense levels known or that reasonably should have been known by Small. Small argues that no increase is warranted because he did not know and should not have reasonably known that a dangerous weapon was possessed during the conspiracy. The Government argues that Small knew or reasonably should have known that a dangerous weapon was possessed during the conspiracy.

Small admitted in his plea agreement that he knew that Lawrence was a drug dealer in Chicago Heights and that he was on trial with others for participating in a drug conspiracy case that allegedly used guns, including the Tec-9 and Glock 9 mm. Accordingly, Small admitted that he knew of the possession of weapons; and a two-level increase pursuant to Section 2D1.1(b)(1) is warranted. *See United States v. Booker*, 125 S. Ct. 738, 749 (2005) (*Booker*) (violations of the Sixth Amendment occur in the application of mandatory sentencing guidelines only when enhancing facts are not reflected in the jury's verdict or admitted by the defendant).

Based on the above, the applicable offense level would be 36 (34 + 2). Pursuant to Section 2X3.1, this offense level is then reduced by 6. Thus, the offense level, before any possible downward departure is 30.

The application of an offense level of 30 does not implicate *Booker* (or *Apprendi v. New Jersey*, 530 U.S. 466 (2000)) because Small's possible sentence, based on an offense level of 30 with a Level II criminal category, is 108-135 months; this is less than the maximum sentence authorized by the facts established by Small's guilty plea that the Court could impose if it imposed consecutive sentences. *Booker*, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by a defendant . . . .").

The parties also dispute whether Small's criminal history should include Small's completed supervision for a February 1999 sentence related to Small's conviction for misuse of a credit card. Small argues the conviction should not be included as a criminal history point because Small was

eligible to have the arrest expunged up until the time he was actually convicted of a subsequent criminal offense pursuant to Illinois law. However, Small never did have it expunged; and it remains part of his criminal history.

Lastly, the parties contest whether Small should receive a three-level reduction for acceptance of responsibility. The parties concede that Small pled guilty to the charges. The Government argues that Small did not accept responsibility for his actions as demonstrated by his arrest for possession of cocaine on the same day Small was released on Bond. Small also continued to use drugs after his arrest and while on bond. Accordingly, a three-level reduction for acceptance of responsibility is not warranted.

Based on the above, Small's total offense level is a 30; and he is not eligible for a reduction for acceptance of responsibility. Furthermore, his criminal history category is a Level II.

Dated: June 28, 2005

JOHN W. DARRAH
United States District Judge